IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

SAMTERIOUS GORDON,

                         Plaintiff,

          v.

DANIEL VANDERWERFF, DANIEL UNESKI,
MICHAEL SCHULTZ AND DAVID HESS,

                     Defendants.

                                      OPINION AND ORDER

                                        20-cv-415-bbc

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

      Pro se plaintiff and prisoner Samterious Gordon alleges that defendant Officer Daniel VanderWerff used an electronic stun device to hurt him, in retaliation for plaintiff's filing a federal lawsuit against prison staff. Plaintiff alleges that three other correctional officers watched and laughed at VanderWerff's actions without intervening.

      Plaintiff was granted leave to proceed on claims under the First and Eighth Amendments. Now before the court is defendants' motion for summary judgment, in which they argue that plaintiff cannot prove his claims against them. Dkt. #30. Because plaintiff's allegations are refuted by video footage of the incident, I will grant defendants' motion for summary judgment.

      Also before the court are three motions filed by plaintiff. First, plaintiff filed a motion for sanctions against defendants, on the ground that defendants' counsel altered the video footage from the federal courthouse that recorded the incident. Dkt. #23. He points out that the video footage submitted by defendants starts at the moment when defendant

1

VanderWerff was placing the Band-it stun cuff on plaintiff's leg, but it does not show the moments before VanderWerff attached the device.

However, plaintiff has not shown that defendants are at fault for any missing portion of the video. Defendants' counsel submitted a sworn declaration stating that counsel obtained a copy of the video footage via subpoena from the United States Marshals Service in plaintiff's previous case, Gordon v. Dobbert, W.D. Case no. 18-cv-176. The Department of Justice's litigation technology support team converted the video footage to a playable format, but did not edit or alter the footage in any way. Dkt. #25, ¶ 4. Counsel later contacted the Marshals Service to ask whether there was any additional video footage from the relevant dates, and the Marshals Service responded that it had not retained any video footage from January 6 or 7, 2019. Dkt. #36, ¶¶ 4-5. Plaintiff has submitted no evidence to suggest that defendants or defendants' counsel altered the video footage, or that they were responsible for the lack of video footage from the moments right before VanderWerff attached the stun cuff. Therefore, I will deny plaintiff's motion for sanctions.

Second, plaintiff also filed a motion to amend his complaint to add a negligence claim against defendants. Dkt. #43. Because I am dismissing all of plaintiff's federal claims from this case, I will deny his motion to add state law claims. Coleman v. City of Peoria, Illinois, 925 F.3d 336, 352 (7th Cir. 2019) (federal court should relinquish supplemental jurisdiction over state-law claims if all federal claims are resolved before trial).

Third, plaintiff filed a motion to file a sur-reply in opposition to summary judgment. Dkt. #57. I will grant that motion, and have considered plaintiff's additional responses to

defendants' proposed findings of fact.

From the parties' proposed findings of fact and the video footage of the incident, I find the following facts to be undisputed unless otherwise noted.

UNDISPUTED FACTS

Plaintiff Samterious Gordon was a prisoner incarcerated at New Lisbon Correctional Institution at all times relevant to this case.  Defendants worked at New Lisbon; Daniel VanderWerff and David Hess were correctional sergeants, and Daniel Uneski and Michael Schultz were correctional officers.

On January 6, 2020, defendants were assigned to transport plaintiff and another inmate to the federal courthouse in Madison, Wisconsin, where plaintiff had a jury trial. The group arrived at the courthouse at approximately 7:15 a.m. and were escorted to a secure area.  The federal marshals directed defendants to remove plaintiff's and the other inmate's restraints and apply electronic control devices, called "Band-its," to the inmates' legs, under their pants, before they entered the courtroom.

The Band-it is an electronic control device that contains 50,000 volts of electricity. By means of a remote transmitter, an attending officer has the ability to activate the Band-it attached to the inmate's leg and cause the inmate to receive an electric shock.  The Band-it is placed in a sleeve before it is applied to the inmate's leg, with the metal prongs on the Band-it connecting to metal tabs on the sleeve.  An officer may activate the Band-it if the inmate does any of the following:  engages in an outburst or quick, hostile movement;

tampers with the device; fails to comply with a verbal command for movement; attempts to escape; hides his hands; or engages in an overt act against a person within a 50 foot vicinity. If the Band-it is activated to stun an inmate, the inmate will fall to the ground and may self-defecate or self-urinate.

Defendant VanderWerff was responsible for applying the Band-it device on plaintiff on January 6, 2020. Before applying the Band-it, VanderWerff reviewed with plaintiff an electronic control device notification form. The form advises inmates: (1) they are being required to wear a Band-it; (2) the types of situations in which the device may be activated by an officer; and (3) the consequences if the device is activated. Plaintiff acknowledged and signed the form. VanderWerff then retrieved a Band-it from a bag and placed it into a sleeve, which would attach to plaintiff's leg. Once the Band-it was secured into the sleeve, VanderWerff turned it on. VanderWerff asked for the attention of both plaintiff and the other inmate, so that he could explain the process for the court hearing. VanderWerff then activated the Band-it with a test beep, and told the inmates that if they heard this beep sound in court, they were to stop any disruptive behavior immediately. VanderWerff then ran a full cycle of the Band-it, approximately eight seconds, to demonstrate how it worked. (It was standard policy to test the Band-it device before placing it on an inmate.) After the cycle was complete, VanderWerff stated that the device would be activated only if the inmates became disruptive and continued the disruption after hearing the warning beep. (Plaintiff says that VanderWerff also stated that since plaintiff was suing his coworker, he would get stunned if he "fucked up in court." VanderWerff denies saying this.)

4

VanderWerff then attached the Band-it device to plaintiff's right calf. (According to defendants, VanderWerff placed the device on plaintiff without incident or complaint from plaintiff. However, plaintiff says that the Band-it was hot from the test cycle, and that he told VanderWerff that the device was hot and needed to be removed. Plaintiff says he also told VanderWerff and the other defendant officers that the device was too tight, and that all defendants laughed at him.)

Surveillance cameras outside the federal court's holding cells captured some of the incident. (The video footage does not include audio.) There is no footage showing VanderWerff talking to plaintiff or the other inmate about the Band-it device or of VanderWerff running the test cycle. The footage starts as VanderWerff is attaching the device to plaintiff's ankle. It takes VanderWerff approximately 30 seconds to attach the Band-it, after which plaintiff adjusts his clothing and sits on the bench of the holding cell. Plaintiff does not flinch, struggle or show any signs of pain while VanderWerff was attaching the Band-it or afterward. The footage shows plaintiff reviewing papers and sitting calmly in the cell until he is accompanied into the courtroom by defendants. At no point during the video do defendants appear to be laughing at plaintiff.

Plaintiff testified at his deposition that he repositioned Band-it several times throughout the day, and that he never mentioned any discomfort or pain to the judge, assistant attorney general or federal marshals during his trial. Plt.'s Dep., dkt. #41-1, at 11-12. He also testified that he never told defendants that he was in pain, but that he did tell them that the Band-it was tight and uncomfortable. Id. at 15, 26-32.

At the end of the first day of the jury trial, at approximately 5:30 p.m., defendant VanderWerff removed the Band-it from plaintiff's right leg. After it was removed, plaintiff stated that the Band-it had been too tight on his leg all day and that he could see imprints from the sleeve on his leg. VanderWerff saw marks on plaintiff's calf that were approximately the size of a shirt button, and he told plaintiff that the marks were likely from the snap that attached the Band-it to the sleeve. When they returned to the prison, VanderWerff told plaintiff that if he wanted to see health services about his leg, he should submit a health services request form.

Plaintiff attended the second day of his jury trial on January 7 without incident. When he returned to the prison after the completion of his trial, plaintiff submitted a health service request stating:

> Yesterday I went to court and the CO put the Hot taser on my leg [and] now my leg is bubbled up with scars and puss coming out. I just stopped bleeding I need to see a nurse Now before it get infected.

Dkt. #47-16. Plaintiff saw a nurse the next day. He told her that he had burns on his leg from a hot taser. The nurse noted that plaintiff had some small blisters caused by a "first degree burn." She washed plaintiff's right calf with soap and water, dried it, placed gauze over the area and secured it with a dressing. The blisters resolved without further intervention.

After plaintiff reported to prison staff that a correctional officer had burned him with a taser, Lieutenant Travis Haag investigated the incident. He retrieved the Band-it device that had been attached to plaintiff's leg and activated it for one cycle. He determined that

neither the device nor the sleeve remained hot after the cycle was completed.  He also compared the distance between the metal contact points on the Band-it sleeve and the blisters on plaintiff's skin.  He concluded that the measurements did not match and that plaintiff's blisters were not burns caused by the device.

OPINION

The Eighth Amendment prohibits the "unnecessary and wanton infliction of pain" on a prisoner.  Lewis v. Downey, 581 F.3d 467, 475 (7th Cir. 2009).  To prevail on an Eighth Amendment excessive force claim, a prisoner must prove that the offending officer applied force "maliciously and sadistically for the very purpose of causing harm," rather than "in a good faith effort to maintain or restore discipline."  Hudson v. McMillian, 503 U.S. 1, 6–7 (1992) (quoting Whitley v. Albers, 475 U.S. 312, 320–21 (1986)).

The First Amendment prohibits prison staff from retaliating against a prisoner for the prisoner's exercise of First Amendment rights.  To prevail on a First Amendment retaliation claim, a prisoner must prove that (1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was at least a motivating factor in the defendant's decision to take the retaliatory action.  Bridges v. Gilbert, 557 F.3d 541, 546 (7th Cir. 2009).

It is plain from the video footage of the incident and other undisputed evidence that plaintiff's Eighth and First Amendment claims are meritless.  Even though the video footage

7

does not show defendant VanderWerff's initial activation of the Band-it device, the footage captures VanderWerff's attachment of the device to plaintiff's ankle and plaintiff's response moments after the device was attached.  VanderWerff and the other defendants acted calmly and professionally throughout the footage.  Plaintiff never flinched or gave any other indication that he was in pain or distress.  The video shows that after the Band-it was attached to his leg, plaintiff spent the next hour sitting calmly in his cell reviewing his notes before he was called in for court.  Nothing about his demeanor supports his assertions that he had a scalding hot device burning his leg.  Horton v. Pobjecky, 883 F.3d 941, 944 (7th Cir. 2018) ("When video footage firmly settles a factual issue, there is no genuine dispute about it, and we will not indulge stories clearly contradicted by the footage.").  In addition, plaintiff admitted at his deposition that although he told defendants that he was uncomfortable and that the Band-it felt hot, he did not tell defendants or anyone else at the courthouse that he was in pain.  Plt.'s Dep., dkt. #41-1, at 15.

Plaintiff argues that his claim is supported by the nurse's assessment of his blisters as being caused by a taser burn.  Dkt. #40-1.  However, the nurse noted that plaintiff's blisters were caused by a burn based on plaintiff's reporting that he was burned.  The health services unit later included a note in plaintiff's record suggesting that the injuries were not likely caused by heat from the Band-it device, as the device did not remain hot after testing and the blisters were not consistent with the metal tabs on the device sleeve.  Id. at 8.  Moreover, plaintiff admits that he moved, spun and repositioned the Band-it device numerous times throughout the day while he was in court, dkt. #41-1 at 11, which could have caused the

blisters that he incurred.

Based on this evidence, no reasonable jury could conclude that VanderWerff subjected plaintiff to an "unnecessary and wanton infliction of pain," that he acted "maliciously and sadistically for the very purpose of causing harm," or that he intentionally harmed plaintiff in retaliation for plaintiff's federal lawsuit.  And because VanderWerff did not violate plaintiff's constitutional rights, defendants Hess, Uneski and Schultz are not liable for failing to intervene.  Accordingly, defendants are entitled to summary judgment.


ORDER

IT IS ORDERED that

1.  Plaintiff Samterious Gordon's motion for sanctions, dkt. #23, and motion to amend his complaint, dkt. #43, are DENIED.

2.  Plaintiff's motion to file a sur-reply, dkt. #57, is GRANTED.

3.  The motion for summary judgment filed by defendants Daniel VanderWerff, David Hess, Daniel Uneski and Michael Schultz, dkt. #30, is GRANTED.

4.  The clerk of court is directed to enter judgment for defendants and close this case.

Entered this 10th day of November, 2021.

BY THE COURT:

/s/

_____
BARBARA B. CRABB
District Judge

9